(No. 45230.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CRAWFORD DISTRIBUTING COMPANY *et al.*,
Appellees.

*Opinion filed Dec. 1, 1972.—Modified on denial of
rehearing Jan. 26, 1973.*

WILLIAM J. SCOTT, Attorney General, of Springfield (ROBERT S. ATKINS, EDWIN C. THOMAS, and BARRY J. SCHMARAK, Assistant Attorneys General, of counsel), for the People.

RECORD, SAPPINGTON, BENNETT & CARPEL, of Decatur, for appellees Crawford Distributing Company, Skeff Distributing Company, Gerald Skeffington, Robert Skeffington, and Robert Crawford.

MARSHALL A. SUSLER and ROBERT D. OWEN, of OWEN, ROBERTS, SUSLER & TAYLOR, of Decatur, for appellee Maurer Distributing Company, Inc.

GREANIAS, BOOTH & LIEBERMAN, of Decatur (EDWARD BOOTH and MARVIN S. LIEBERMAN, of counsel), for appellees Harold Roucher and Jerry Roucher.

ROSENBERG, ROSENBERG, BICKES & JOHNSON, of Decatur (JOSEPH L. ROSENBERG and DAVID L. JOHNSON, of counsel), for appellee W. Henry Little.

MR. JUSTICE DAVIS delivered the opinion of the court:

The issues in this appeal arise out of the efforts of the Attorney General and his agents to investigate alleged violations of the Illinois Antitrust Act by the defendants. The record indicates that certain meetings and discussions took place between representatives of the Attorney General and certain of the individual defendants during the course of an investigation conducted by the Attorney General into beer prices in Macon County. Defendants Harold Roucher, Robert T. Crawford, Gerald Skeffington and Henry W. Little received subpoenas directed to the respective corporations of which they were officers or agents, but defendants Jerry Roucher and Robert Skeffington received no subpoenas. None of the individual defendants gave either sworn testimony or a statement under oath to the agents of the Attorney General.

Essentially, this appeal presents two questions for determination by this court: First, may an individual who is an officer or agent of a corporation, but who is neither individually subpoenaed nor gives sworn testimony, claim immunity from prosecution under section 7.7 of the Illinois Antitrust Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—7.7) when he produces corporate records and discusses them in response to a subpoena issued to such a corporation by the Attorney General? Second, is the power vested in the Attorney General to issue such pretrial subpoenas in contravention of the separation of powers doctrine, as expressed in section 1 of article II of the Illinois constitution of 1970? Other ancillary issues have been raised by the various defendants, but we believe that the determination of these two questions are decisive of the issues in this case.

On November 18, 1971, the Macon County grand jury returned an indictment charging 7 corporations and 6 corporate executives of those corporations with combining

and conspiring to fix, control, and maintain the price of beer sold at wholesale in Macon County, in violation of section 3(1)a of the Antitrust Act. Ill. Rev. Stat. 1969, ch. 38, par. 60—3(1)a.

All defendants entered pleas of not guilty and the trial court dismissed the indictment as to all the individual defendants based upon their claim of immunity from prosecution under section 7.7—the immunity provision of the Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—7.7). The People appealed to the appellate court, and after briefs had been submitted by all parties, the trial court discharged the corporate defendants upon their further motions to dismiss the indictment in which they alleged that the Antitrust Act was unconstitutional in its entirety, in that it violated the separation of powers provision of the Illinois constitution (Ill. Const. (1970), art. II, sec. 1). More particularly, the corporate defendants claimed that the legislature had vested the Attorney General, a member of the executive branch of State government, with power to issue subpoenas and perform other functions reserved to the judicial branch. The trial court entered an order finding the entire Antitrust Act (Ill. Rev. Stat. 1969, ch. 38, pars. 60—1 through 60—11) unconstitutional. An appeal from that order was immediately taken by the People to this court under Rule 603. 50 Ill.2d R. 603.

On June 23, 1972, the Attorney General's motion for transfer of the appeal pending in the appellate court was allowed pursuant to Rule 302(b) (50 Ill.2d 302(b)), and the appeals were consolidated. The People were granted leave to file a supplemental brief limited to the question of whether the trial court erred in determining that the immunity conferred pursuant to section 7.7 barred all further prosecutions of these defendants.

Defendant Harold Roucher is the president and majority stockholder of defendant P & D Produce Company, Inc. At one of the meetings with the Attorney General's representatives, and with counsel present, he

allowed corporate records to be copied in response to a subpoena directed to P & D Produce Company, Inc. He also turned over expense records without objecting that they were personal and not company records. No oath was administered to him and no sworn statements were made by him at any of the meetings.

No evidence of discussions or records was offered on behalf of defendant Jerry Roucher. He was dismissed from the suit with the others because the trial court considered the Attorney General's error cumulative.

Defendant Robert T. Crawford is the secretary-treasurer of defendant Crawford Distributing Co., Inc. At one of several meetings with the Attorney General's representatives, he also produced corporate records for copying in response to a subpoena directed to Crawford Distributing Co., Inc. Sworn statements were neither made, nor was an oath administered to him at any of these meetings.

Defendant Gerald B. Skeffington is president of defendant Skeff Distributing Company, Inc. He met with representatives of either the State's Attorney or Attorney General on four or five occasions. The discussions which took place were informal and at none of the meetings was an oath administered to him, or a sworn statement taken from him. He, too, permitted corporate records, as well as certain work papers relating to the price of beer sold by defendant Skeff Distributing Company, Inc., to be copied in response to a subpoena directed to Skeff Distributing Company, Inc.

Defendant Robert Skeffington—brother of the defendant Gerald Skeffington, and an officer of defendant Skeff Distributing Company, Inc.—was merely present at the meetings between his brother and the Attorney General's agents. He answered some of the questions, but was not served with a subpoena, took no oath, and made no sworn statements.

The aforementioned subpoenas all stated, among

other things: "Pursuant to Chapter 38, Section 60—7.2, the Attorney General elects at this time to require the production of documentary material described in the attached rider, and will not require your personal appearance or testimony."

Defendant W. Henry Little is the sales manager for defendant Van Pickerill and Sons, Inc. Pursuant to a subpoena directed to this corporate defendant and served upon him, which made no reference to election by the Attorney General not to take testimony under section 7.2, and to a subpoena served later upon Jay Van Pickerill, the registered agent for the corporation, which subpoena set forth the Attorney General's election not to take testimony in the form above set forth, corporate records were produced for copying. Again, no oaths were administered and no sworn statements were made.

Although Illinois has had an antitrust statute since 1891, one year after the adoption of the Sherman Act by the United States Congress, it has been applied or mentioned in only about thirty reported Illinois and Federal cases, and it has only rarely been enforced by the State, either by the Attorney General or any State's Attorney. See: The Law of Competition in Illinois, U. Ill. Legal Series (1962), p. 39; P. Tone & J. Stifler, New Illinois Trade Regulation Laws: The Antitrust Act (Part One), 54 Ill. Bar J. 294 (December 1965).

A new Antitrust Act was enacted by the 74th General Assembly and became effective July 21, 1965. Only 3 cases were filed by the Attorney General during the three-and-one-half-year period following passage of the Act. In 1969, the Act was amended extensively. Section 7.2 significantly strengthened the investigative powers of the Attorney General by conferring upon him the power to issue civil subpoenas in antitrust investigations in order to obtain the production of relevant books and records, and to secure testimony under oath from those persons having information believed to be essential to the investiga-

tion. (Ill. Rev. Stat. 1969, ch. 38, par. 60—7.2.) Section 7.7 was incorporated in the Act as an adjunct to the subpoena power. It contains an immunity provision which bars criminal prosecution of any witness "for or on account of any testimony given by him" when called by the Attorney General pursuant to his subpoena power. Ill. Rev. Stat. 1969, ch. 38, par. 60—7.7.

This appeal is the first test in Illinois of the 1969 amended Antitrust Act, and is directed primarily at the subpoena power of the Attorney General. The defendants urge a broad construction of the immunity provisions of the Act.

Section 11 of the Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—11) provides:

> "When the language of this Act is the same or similar to the language of a Federal Anti-trust Law, the courts of this state in construing this Act shall follow the construction given to the Federal Law by the Federal Courts."

However, section 1 of article VI of the constitution of 1970 states that "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts" and section 1 of article II provides that: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

The judicial power is vested solely in the courts, and the legislative branch is without power to specify how the judicial power shall be exercised under a given circumstance; it is without authority to state explicitly how the judiciary shall construe a statute. (*People v. Spegal (1955), 5 Ill.2d 211, 219-220; Agran v. Checker Taxi Co. (1952), 412 Ill. 145, 148-149.*) In *Ray Schools-Chicago-Inc. v. Cummins (1957), 12 Ill.2d 376*, at page 381, this court held that where Federal questions are not involved, as where State constitutions and statutes are to be construed, State courts are not required to follow Federal court decisions although they may be persuasive. However, as heretofore noted, there is a dearth of precedent in Illinois

on combinations in restraint of trade, while there has been an abundance of litigation in this field in the Federal courts, under the Sherman Act and other Federal antitrust legislation. (*Standard Oil Co. of New Jersey v. United States (1910), 221 U.S. 1, 55 L. Ed. 619, 31 S. Ct. 502.*) While these decisions are not binding on our courts, the Federal antitrust experience under the Sherman Act is applicable to questions arising under the Illinois Antitrust Act and can serve as a useful guide to our courts.

When section 7.7 of the Illinois Antitrust Act was enacted in 1969, section 32 of the Sherman Act (15 U.S.C. sec. 32)—its immunity provision then in effect—contained comparable basic language. Section 7.7 of the Illinois Act provides that no individual shall be prosecuted thereunder "for or on account of any testimony given by him" in any investigation brought by the Attorney General pursuant to the Act, and section 32 of the Sherman Act recited that no person shall be prosecuted "for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise *** ."

Historically, the Federal government found it necessary to enact immunity statutes in order to successfully prosecute criminal offenses by securing information not otherwise obtainable because of a witness's constitutional privilege against self-incrimination. An early Federal immunity statute in the Interstate Commerce Act was found unconstitutional in *Counselman v. Hitchcock (1892), 142 U.S. 547, 35 L. Ed. 1110, 12 S. Ct. 195,* because the scope of the immunity it granted was not coextensive with the scope of the protection afforded by the fifth-amendment privilege against self-incrimination. Congress immediately corrected the infirmity, and the immunity statute then enacted became a model for all subsequent immunity statutes.

The immunity subsequently claimed under section 32 of the Sherman Act, and similar State and Federal statutes,

was described as "transactional immunity." It extended not only to prosecutions resulting from the use of evidence given under oath or subpoena, and to evidence derived from such testimony, but also to evidence uncovered from testimony given under oath which was substantially connected with the transaction covered by the indictment. In *Halpin v. Scotti (1953), 415 Ill. 104, 108-109,* we held an identical immunity act, section 10a of the Illinois Cigarette Tax Act (Ill. Rev. Stat. 1951, ch. 120, par. 453.10a), to be constitutional.

The provisions of section 7.7 of the Illinois Antitrust Act, however, are narrower in scope than those of either section 32 of the Sherman Act, as it then existed, or section 10a of the Illinois Cigarette Tax Act. Section 7.7 provides immunity to any witness who testifies or produces documentary material "for or on account of any testimony given by him in any investigation brought by the Attorney General pursuant to this Act." We construe this section of the Act to grant only "use and derivative use" immunity; that is, a witness is protected from prosecution resulting from the use of compelled testimony, and from evidence derived therefrom. However, on October 15, 1970, section 32 of the Sherman Act was repealed and Public Law 91-452 was enacted as 18 U.S.C. secs. 6001-6005, and was entitled, "Immunity of Witnesses." It provides, among other things, that "whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide information," upon order issued by the person presiding over the proceeding, "the witness may not refuse to comply but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." (18 U.S.C.

sec. 6002.) Such immunity—"use and derivative use" immunity—was recently held to be constitutional in *Kastigar v. United States (1972), 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653.*

In *Kastigar,* the new Federal Immunity of Witnesses Act (18 U.S.C. secs. 6001-6005) was tested. When this Act became law as part of the Federal criminal code, more than 50 Federal immunity acts, including section 32 of the Sherman Act, were simultaneously repealed. The Supreme Court reviewed the history and necessity of immunity acts, and stated (406 U.S. at ——, 32 L. Ed. 2d at 216-217, 92 S. Ct. at 1656):

> "But the power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory, and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values which underlie the privilege."

This decision reviewed the history of our various Federal immunity statutes—"the Compulsory Testimony Act of 1893," which provided for "transactional immunity," and which was repealed by the "Immunity of Witnesses Act" of October 15, 1970. The Court held that immunity from "use and derivative use" is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. In quoting from *Murphy v. Waterfront Commis-*

*sion of New York (1964), 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594,* the Court stated (406 U.S. at ———, 32 L. Ed. 2d at 226, 92 S. Ct. at 1665):

> " 'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' "

The court further stated (406 U.S. at ———, 32 L. Ed. 2d at 227, 92 S. Ct. at 1666):

> "We conclude that the immunity provided by 18 U.S.C. sec. 6002 leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege. The immunity therefore is coextensive with the privilege and suffices to supplant it."

That a "use and derivative use" immunity statute does not confer immunity from prosecution upon either corporate defendants or upon individual defendants who furnish corporate records or information outside of judicial proceedings to an investigating officer, and make no sworn statement, is clear from the ruling in *United States v. Monia (1943), 317 U.S. 424, 87 L. Ed. 376, 63 S. Ct. 409;* 15 U.S.C. sec. 32-33. The defendants there gave sworn testimony before a grand jury substantially connected with the transaction covered in their subsequent indictment and were granted immunity. It is clear that the immunity was granted only as a result of giving testimony under oath and in response to a subpoena. The United States Supreme Court has ruled that immunity does not extend to witnesses who furnish unsworn information to a congressional committee (*United States v. Welden (1964), 377 U.S. 95, 12 L. Ed. 2d 152, 84 S. Ct. 1082*) or to the Federal Trade Commission (*Sherwin v. United States*

*(1925), 268 U.S. 369, 69 L. Ed. 1001, 45 S. Ct. 517).*

We conclude, therefore, that the individual defendants here did not have immunity conferred upon them, since they made unsworn statements only to the Attorney General's representatives, and did so aside from any judicial proceedings. The language of sections 7.2 and 7.7 of the Illinois Antitrust Act is clear in this respect. The expense records of defendant Harold Roucher, now claimed to be personal records, were not so identified when turned over to the Attorney General's representatives. They were corporate records, and, therefore, cannot now afford the basis for a claim of personal immunity.

The second issue here raised by the corporate defendants, fundamental to the validity of the entire Antitrust Act, challenges the power of the legislature to vest in the Attorney General the power to issue subpoenas aside from judicial proceedings. These defendants contend that the Attorney General, a member of the executive branch of State government, in exercising the subpoena power for investigatory purposes prior to indictment, is infringing upon the judicial prerogative and the rules of judicial procedure.

We find that the corporate defendants' argument in this respect lacks merit. The subpoena power which is conferred upon the Illinois Attorney General is not unique. Similar powers have been so conferred in connection with the investigation of antitrust cases in New York, Kansas, Hawaii, Texas, Washington and Florida. And the "administrative" subpoena has been granted to the Illinois Attorney General for investigations in consumer fraud (Ill. Rev. Stat. 1969, ch. 121½, par. 264) and charitable trust matters (Ill. Rev. Stat. 1969, ch. 23, par. 5110). Other State agencies are also vested with subpoena powers, *e.g.,* Secretary of State, *re* Motor Vehicle Act (Ill. Rev. Stat. 1969, ch. 95½, par. 2—113); Secretary of State, *re* securities investigations (Ill. Rev. Stat. 1969, ch. 121½, par. 137.11(G)); Illinois Crime Commission (Ill. Rev. Stat.

1969, ch. 38, par. 203—13); Technical Secretary of the Air Pollution Board (Ill. Rev. Stat. 1969, ch. 111½, par. 240.9(c)); Department of Corrections, *re* investigation of State penal institutions (Ill. Rev. Stat. 1969, ch. 108, par. 10); Director of Insurance, *re* violations of Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 1015); Department of Labor, *re* wages of employees on public works (Ill. Rev. Stat. 1969, ch. 48, par. 39s—10) and *re* labor disputes (Ill. Rev. Stat. 1969, ch. 10, par. 21).

In construing this power it is clear that the Attorney General does not have a totally unrestricted power to issue subpoenas and investigate violations of the Act. The Supreme Court in *United States v. Morton Salt Co. (1950), 338 U.S. 632, 652-653, 94 L. Ed. 401, 416, 70 S. Ct. 357, 369,* stated:

> "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.
>
> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. *Federal Trade Comm'n v. American Tobacco Co., supra.* But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' *Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208.*"

The constitutional validity of a power to issue subpoenas for investigatory purposes by an agent or agency of the legislative branch of the government has

been ruled upon previously by this court. In *Illinois Crime Investigating Com. v. Buccieri (1967), 36 Ill.2d 556, 564,* 15 defendants who had been subpoenaed to testify before the Commission, created by the legislature (Ill. Rev. Stat. 1965, ch. 38, par. 203—13), refused to appear. The aid of the circuit court was invoked, and they were ordered to appear. This court upheld the validity of the subpoenas, as well as the authority of the legislature to vest such power in the Commission, and at page 561 stated:

"Under the fundamental rules of statutory construction as laid down by this court from time to time, it has long been held that it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked. [Citations.] Complementary principles of equal force and stature are that the legislature is presumed to act in view of the constitution and not to intend a violation of its provisions or the enactment of a void law. [Citations.]"

Thus, under *Buccieri,* this court approved the power of a legislative commission to issue subpoenaes aside from a judicial proceeding and we see no reason why such subpoena power would be invalid when reposed in a member of the executive branch of the State government.

The corporate defendants argue nevertheless that the constitution of 1970, article V, section 15, and the statute defining the powers and duties of the Attorney General (Ill. Rev. Stat. 1971, ch. 14, par. 4) do not provide either expressly or by implication for such power as he has been granted by the legislature under section 7.2 of the Antitrust Act.

Although the subpoena power is not vested in the Attorney General under the constitution of 1970, we hold that the constitutional provision that "[t]he Attorney

General *** shall have the duties and powers *** prescribed by law," is sufficiently broad to warrant such a legislative grant. Also, this court has held that the powers and duties of the Attorney General include not only those powers conferred upon him by statute, but also those powers and duties inherent in the office as it existed at common law. *People ex rel. Elliott v. Covelli (1953), 415 Ill. 79, 83.*

We hold, therefore, that the legislative grant of power to the Attorney General to subpoena witnesses and otherwise investigate alleged violations of the Antitrust Act, under section 7.2 thereof is constitutional, and not a violation of section 1 of article II of the Illinois constitution of 1970.

Other issues raised by the defendants will be considered briefly. The failure to give the *"Miranda* warnings" was not fatal to the Attorney General's indictment. In *United States v. Globe Chemical Co. (S.D. Ohio 1969), 311 F. Supp. 535, 546-547,* the court, without prejudice to the right of the defendant to later file a motion to suppress evidence on the ground that his constitutional rights were violated, held that the *Miranda* warnings were not required in a factual situation identical to that herein.

In view of our decision, it will be unnecessary to consider the defendants' additional contention that the trial court's judgment can be affirmed even though the court's findings were incorrect.

The defendants also assert that the indictment was not sufficiently specific and should be dismissed. However, similar indictments, which alleged the scheme and purpose of the combinations with sufficient particularity to enable those charged to prepare a defense and to preclude further prosecutions on the combination charged, have been found sufficient by the Federal courts. See: *United States ex rel. Hughes v. Gault (1926), 271 U.S. 142, 151, 70 L. Ed. 875, 877-878, 46 S. Ct. 459; Nash v. United States (1912), 229 U.S. 373, 375-378; United States v. Cowell (D. Ore. 1917),*

*243 F. 730, 732-733;* 58 C.J.S., Monopolies, sec. 108, p. 1142.

The indictment here under consideration was not without detail. It defined its terms; named all of the defendants, both individual and corporate; described them as co-conspirators in the offense charged; described the nature of the trade and commerce involved; asserted the offense charged and that it violated section 3—(1)a of the Illinois Antitrust Act; and further detailed the scope, purpose and effect of the fixing, controlling and maintaining the price of beer sold at wholesale by the defendants in Macon County. We believe the indictment adequately informed the defendants of the charges against them.

For the reasons stated above, the judgment of the circuit court of Macon County is reversed, and the cause remanded for further proceedings not inconsistent with the views expressed herein.

*Reversed and remanded.*