THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, *v.* SCHWULST BUILDING CENTER, INC., *et al.*, Defendants-Appellees.

Fourth District    No. 16287

Opinion filed January 7, 1981.

GREEN, J., dissenting.

William J. Scott, Attorney General, of Chicago (Thomas M. Genovese, Thomas J. DeMay, and Bruce J. Baker, Assistant Attorneys General, of counsel), for appellant.

John P. Schwulst, of Arnold, Gesell & Schwulst, of Bloomington, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal raises a basic question of statutory interpretation of the Illinois Antitrust Act (Ill. Rev. Stat. 1979, ch. 38, par. 60—1 *et seq.*) (the Act), and a related question of pleading. These center upon the validity of a complaint brought under section 3(4) of the Act, charging what is commonly referred to in antitrust argot as "tying," or a "tied sale." A tied sale is generally understood as being one in which the vendor sells a product only on condition that the vendee purchase from him another related product. The latter is ordinarily useful, even sometimes necessary, to the enjoyment of the former.

The record reveals that the defendants own or control a number of single-family building lots in the Bloomington-Normal area. In addition, they are engaged in selling building materials to contractors and home builders in the same area. Some of the materials are sold as a package, consisting principally of preassembled roof trusses, floor trusses, exterior and interior walls and exterior trim.

Pursuant to the power granted him by section 7.2 of the Act, the Attorney General of Illinois conducted a lengthy investigation of the defendants, who are the corporation engaged in the business described above and its two chief operating executives. This culminated in the filing of the instant suit which seeks civil remedies, injunctive relief under section 7(1) and monetary penalties under section 7(4) of the Act.

The alleged violation, under section 3(4) as indicated above, was that the purchase of a building lot was conditioned upon the purchase of a package of building materials to be used on the same lot.

The original complaint was filed in the circuit court of McLean County on February 16, 1977. Each defendant moved to dismiss under sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45, 48). These motions were allowed by the trial court on June 22, 1977, with leave to plead over allowed. The amended antitrust complaint, which is at issue here, was filed July 29, 1977. Similar motions to dismiss the amended complaint were denied on November 2, 1977, and December 30, 1977.

Meanwhile, on November 17, 1977, the defendants filed a demand for a bill of particulars. This demand was allowed by the trial court on January 3, 1978, and plaintiff filed the bill on February 10, 1978. On March 3, 1978, defendants filed a motion to strike the bill. Arguments were heard on the motion on August 3, 1978, and the matter was taken under advisement for a little over 12 months. On August 7, 1979, the trial court allowed the motion to strike the bill with leave to plead over allowed.

Plaintiff filed an amended bill of particulars on September 6, 1979. Defendants filed a motion to strike the amended bill and to dismiss the

action with prejudice. This motion was allowed on March 25, 1980. The trial court assigned no specific reasons for its order but held simply that the amended complaint did not state a cause of action and the bill of particulars did not reasonably answer the questions posed by the defendants.

A short résumé of the history of the Federal and State antitrust laws will be helpful in setting the stage for our conclusions. The first Federal law of significance was the Sherman Act (15 U.S.C. §§1-7 (1976)) which deals with monopolistic practices. It was passed by Congress in 1890. Illinois followed with its own antitrust act, largely patterned after the Sherman Act, in 1891. In 1914, Congress added the Clayton Act (15 U.S.C. §§12, 13, 14-21, 22-27 (1976)), which is generally thought of as concerned with exclusive dealings and related practices.

The basic provision of the Clayton Act (15 U.S.C. §14 (1976)) has not been amended since its passage. It must be borne in mind always that although the Sherman Act and the Clayton Act are contained within the same title of the U.S. Code, they are separate statutes aimed at correcting differently perceived evils. Neither their substance nor their procedure is identical.

The 1891 Illinois antitrust statute was largely ignored and not enforced. In 1965, the legislature repealed the statute and enacted a wholly new one, the Illinois Antitrust Act (Ill. Rev. Stat. 1979, ch. 38, pars. 60—1 et seq.). The 1965 act was again patterned on the Sherman Act and consciously omitted the Clayton Act.

In its Commentary on the 1967 Illinois Antitrust Act, the Committee on Antitrust Laws of the Chicago Bar Association said:

> "The draft was specifically intended to remove the deficiencies found to exist in the Act of 1891, summarized above. On the other hand, it was not considered wise to incorporate all features of the comparable federal legislation. S.B. 116 is similar to the federal Sherman Act of 1890 and to some of the contemporary legislation of the several States. It was not deemed necessary or desirable to include measures comparable to the several substantive antitrust sections of the Clayton Act of 1914, not to take the approach of the Federal Trade Commission Act." Ill. Ann. Stat., ch. 38, par. 60, at 441 (Smith-Hurd 1977).

In 1969, the legislature elected to add section 3(4) to the Act. This was an almost verbatim enactment of the Clayton Act verbiage with two major exceptions: (1) the addition of the words, "or services," and (2) the elimination of the words necessary for Federal jurisdiction. A comparison of the statutes is:

*Clayton*

"* * * lease or make a sale or contract for sale of goods, wares, merchandize, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale, * * * or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or lesser, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

*Illinois*

"Lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, *or services*, whether patented or unpatented, for use, consumption, enjoyment or resale, or fix a price charged thereof, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other *commodity or service* of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for *such* sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce; *or*"

(Variations in the Illinois Act indicated by italics.)

■■ The conscious parallelism of the Illinois Act to the Clayton Act is obvious. In such a situation it is fundamental law that the interpretation placed on the statute by the jurisdiction from which it was taken becomes part of that statute. The supreme court said in *Hansen v. Raleigh* (1945), 391 Ill. 536, 549, 63 N.E.2d 851, "When a statute is adopted from another State, the judicial construction previously placed on the statute by the courts of that State accompanies it, and is treated as incorporated therein. [Citations.]" (Accord, *F & F Laboratories, Inc. v. Chocolate Spraying Co.* (1955), 6 Ill. App. 2d 299, 127 N.E.2d 682.) Under this principle, lacking Illinois precedents, it becomes the duty of the Illinois courts to look to Federal decisions for guidance.

Apart from the general rule just cited, the Act itself mandates that Federal law shall be used in construing the statute. Section 11 (Ill. Rev. Stat. 1979, ch. 38, par. 60—11) provides:

"When the language of this Act is the same or similar to the language of a Federal Anti-trust Law, the courts of this state in con-

struing this Act, shall follow the construction given to the Federal Law by the Federal Courts."

The Bar Committee Comments to this section read in part as follows: "While admittedly this section may be very difficult of application, it would seem that what is really intended is that the Illinois Act will be given a construction which keeps it consistent with the Sherman Act and the comparable procedural (but not substantive) provisions of the Clayton Act. Therefore, whenever the language and structure of the Illinois Act do not indicate that a different result was intended, and where the activity in question is clearly within the scope of both laws, then the Illinois Act should be given a construction which is the same as that reached by the federal courts." Ill. Ann. Stat., ch. 38, par. 60—11, at 513 (Smith-Hurd 1977).

We note that these Comments were written in 1967, before the enactment of section 3(4) in 1969. It is therefore fair to assume that the substantive provisions of the Clayton Act, as well as the procedural, will now be construed according to Federal decisions.

It is on this point that the major difference and dispute occur between the parties. It will be remembered that the amended complaint alleged violations of section 3(4) only, that is, Clayton-type violations, as distinguished from Sherman-type violations.

The matter is of some consequence. Violations of the Clayton Act are treated harshly and if the conduct forecloses a substantial share of the market, it becomes a *per se* violation (*Standard Oil Co. v. United States* (1949), 337 U.S. 293, 93 L. Ed. 1371, 69 S. Ct. 1051). Many cases of this nature are decided in favor of the government by summary judgment.

On the other hand, some violations of the Sherman Act are considered under what is called the "rule of reason." The Sherman Act was divided in the Illinois Act into subparagraphs (1), (2), and (3). (Ill. Rev. Stat. 1979, ch. 38, pars. 60—3(1), 60—3(2), and 60—3(3).) Subparagraph (1) is admittedly a *per se* offense under both the Illinois and the Federal laws, but subparagraph (2) by its own terms requires an unreasonable restraint and is subject to the "rule of reason."

There appears to be no substantial dispute between the parties that a tying sale, under the proper circumstances, may be a violation of either the Clayton Act or the Sherman Act, and thus a violation of either section 3(4) or section 3(2) of the Illinois Act. In the instant case, plaintiff maintains that the tying sale is a violation of Clayton section 3(4) and hence is a *per se* case. Defendants maintain that under the Federal decisions the Clayton Act does not apply to land; therefore, since Illinois had adopted the Clayton Act via section 3(4), there can be no violation here. Plaintiff counters by arguing that under the definition of "commodity," as found in

section 4 of the Act (Ill. Rev. Stat. 1979, ch. 38, par. 60—4), land is specifically included as to all parts of the Act.

■■ Our principal inquiry then must be whether the legislature in adopting the Clayton Act with modifications in 1969, intended to include land by way of the 1965 definition. Our answer is in the negative.

The 1965 Illinois Antitrust Act makes clear that the drafters were intent that land should be included within its scope. The definitional section placed this beyond argument. This codifies in Illinois what was established by judicial decision under the Sherman Act, namely, that land was included within its prohibition. (*Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 2 L. Ed. 2d 545, 78 S. Ct. 514.) However, the word "commodity" appears in the 1965 Act only in subparagraphs a, b, and c of section 3(1) which relates to contracts in conspiracy or combination with a competitor. Furthermore, it is syntactically bound to a series of participles, "fixing," "controlling," "maintaining," "allocating," "dividing," where the emphasis is on the action taken, not the object of such action.

The incorporation of the mildly modified Clayton Act in 1969 as section 3(4) presents an entirely different picture. It is quite apparent that the drafters were emphatic in their inclusion of services. This is at variance with the Federal law, which excludes services from the operation of Clayton. (*Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.* (2d Cir. 1975), 510 F.2d 1140.) However, they left standing without any alteration the words, "or other commodities," which are syntactically bound to a series of nouns, "goods," "wares," "merchandise," "machinery," "supplies." The Federal courts have applied the rule of *ejusdem generis*, and have held that "or other commodities" does not include land. (*United States v. Investors Diversified Services, Inc.* (D. Minn. 1951), 102 F. Supp. 645; *Moore v. Jas. H. Mathews & Co.* (9th Cir. 1977), 550 F.2d 1207.) If the 1969 drafters had omitted the words, "or other," so that the phrase would read "goods, wares, merchandise, machinery, supplies, commodities, or services," then it would be clearer that land, under the section 4 definition, would be included. Since there was one deliberate modification, *i.e.*, "or services," and the preceding language was left standing exactly as in the Federal law, we are led to the conclusion that the legislature did not intend any departure from the Federal rule. The same may be said of the words, "commodity or service," appearing in connection with the purchaser.

The dichotomy exists in the Federal law. We are not required to comment here on its rationale. Suffice it to say, it has been adopted into the Illinois law. (*Hansen.*) If the legislature had intended a different rule, it would have been quite simple to make the alteration at the same time that services were included in section 3(4).

Plaintiff has by supplement to the record called our attention to a

recent Connecticut case, *State v. Hossan-Maxwell, Inc.* (1980), ___ Conn. ___, ___ A.2d ___. We do not find it persuasive. The Connecticut statute, as recited by the court, is substantially different from both the Clayton Act and the Illinois Act. The court stated only that the Connecticut statute was "patterned" after the Clayton Act, and therefore it would adopt the Clayton Act test in determining whether there was a violation in the furnishing of services. The fact that land was involved was collateral to the principal issue in the case.

We are therefore of the opinion that plaintiff would be unable to state a cause of action under the facts of this case under section 3(4) of the Act. However, it does not follow that plaintiff could not state a cause of action under the Sherman-type provisions of section 3, particularly section 3(2). ■■ The dismissal with prejudice was improper. The rule is that such a dismissal should not be made unless it clearly appears that no set of facts could be established which would entitle the plaintiff to relief. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259.

We have examined the amended bill of particulars and believe that the trial court was in error in striking it. The answers give the defendants all the information for which they asked. Adequate discovery procedures exist for amplification, if necessary.

For the foregoing reasons, the dismissal of the amended complaint insofar as it attempts to sound under section 3(4) of the Act is affirmed; the dismissal with prejudice is reversed, as is the order striking the amended bill of particulars. The cause is remanded to the circuit court of McLean County with directions to reinstate it and allow plaintiff leave to file a second amended complaint and for such further proceedings as may be necessary in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

MILLS, J., concurs.

Mr. JUSTICE GREEN, dissenting:
Despite the depth of analysis and clarity of expression of the majority opinion, I cannot agree that section 3(4) of the Illinois Antitrust Act (Ill. Rev. Stat. 1979, ch. 38, par. 60—3(4)) does not apply to land.

Section 4 of the Illinois Antitrust Act as enacted in 1965 (Ill. Rev. Stat. 1965, ch. 38, par. 60—4) states in part, "As used in this Act unless the context otherwise requires: * * * 'Commodity' shall mean any kind of real or personal property." When section 3(4) was enacted in 1969, the legislature expressly provided that it apply to "services," which were not covered by the provision of the Clayton Act upon which it was closely modeled. However, the legislature had no reason to make a direct express

reference to land, which was also not covered by the Clayton Act, because the language taken from the Clayton Act referred to the term "commodity" and section 4 defined "commodity" to include land unless the context otherwise required. It should be noted that section 3(4) was enacted in such a manner as to put it in the context with other parts of section 3 where the term "commodity" was obviously intended to include land. The "language and structure of the Illinois Act" thus indicates that section 3(4) does apply to land even though the comparable provision of the Clayton Act did not do so.

Because of the position taken by the majority, I need not detail my views as to the other technical matters involved in the case except to state that I (1) consider the complaint to state a cause of action, and (2) would, therefore, reverse the judgment dismissing the complaint and remand for further proceedings.