THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, *v.* COLLEGE HILLS CORPORATION *et al.*, Defendants-Appellees.

Fourth District    No. 16285

Opinion filed January 7, 1981.—Rehearing denied February 13, 1981.

CRAVEN, J., concurring in part and dissenting in part.

Tyrone C. Fahner, Attorney General, of Chicago (Thomas M. Genovese, Chief Assistant Attorney General, Thomas J. DeMay and Bruce J. Baker, Assistant Attorneys General, of counsel), for appellant.

Robert J. Lenz, of Bloomington (Thomas D. Morgan, of Atlanta, Georgia, of counsel), for appellee Vernon P. Prenzler.

John P. Schwulst, of Arnold, Gesell & Schwulst, of Bloomington, for appellee Carl F. Schwulst.

Robert Markowitz, of Bloomington, for appellees College Hills Corporation, Washington East Partnership, and Lumberland, Inc.

Leon J. Zanoni and G. Michael Prall, both of Yoder, Yoder, Zanoni, Flynn & Prall, of Bloomington (Thomas Morgan, of counsel), for appellee Phillip E. Baumgart.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Blooming-ton (Frank M. Brady, William T. Hundman, and Mark T. Dunn, of counsel), for other appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On August 28, 1979, plaintiff, the Attorney General of the State of Illinois filed an amended complaint in a civil penalty action in the circuit court of McLean County under section 7(4) of the Illinois Antitrust Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—7(4)). Named as defendants were: College Hills Corporation; Complex Development Company (which was subsequently dismissed when merged into College Hills Corporation); Empire Development Company; Lumberlane, Inc.; Washington East Partnership; Vernon E. Prenzler; Phillip E. Baumgart; Richard H. Hund-man; and Carl F. Schwulst. A prior similar complaint against the same defendants had been filed on November 8, 1977, and later dismissed on the motion of the defendants. On March 25, 1980, pursuant to a further motion by defendants, the amended complaint was also dismissed, this time in bar of action. Plaintiff appeals.

Count I of the amended complaint alleged that the individual de-fendants were competitors in the home development industry and that they: (1) formed College Hills, Empire Development, and Washington East as joint ventures; (2) purchased lots from the joint venture and sold the lots to the public at prices agreed upon between themselves; and (3) thereby eliminated price competition between competitors. The count also alleged that College Hills and Washington East were competitors and made an agreement as to the prices they would charge for the sale of certain lots, thus restraining the supply of the lots and reducing the com-petition in the sale thereof. Count II charged defendants with conspiring to unreasonably restrict competition in the sale of lots and building mate-rials in Bloomington and Normal. Count III charged Lumberlane, Inc., with illegally tying the sale of lots to the sale of home building materials.

Plaintiff maintains that each count stated a cause of action, while defendants assert that each count had substantial defects. We will detail and discuss the alleged defects of each count separately. As we do so, it is well to keep in mind that we are often concerned with the specificity of allegations required and not with the specificity of proof required.

Count I purports to state a violation of section 3(1)(a) of the Act which provides:

"Every person shall be deemed to have committed a violation of this Act who shall:

(1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agree-ment would be, a competitor of such person:

a. for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the parties thereto, or the fee charged or paid for any service performed or received by the parties thereto." (Ill. Rev. Stat. 1979, ch. 38, par. 60—3(1)(a).)

The foregoing provision has been said to provide for a *per se* violation of the Act because a violation is established by proof of the prohibited action having taken place for a prohibited purpose or having the prohibited effect regardless of whether the conduct involved may be reasonable and regardless of whether any precise harm is shown to have resulted from the prohibited conduct. *Blake v. H-F Group Multiple Listing Service* (1976), 36 Ill. App. 3d 730, 345 N.E.2d 18.

Defendants maintain that count I here fails to substantively state a cause of action under the *per se* theory of section 3(1)(a) because the defendants who were alleged to have fixed prices for lots were alleged only to be competitors in the business of selling building supplies and not in the ancillary business of selling lots. They maintain that under those circumstances a violation of the Act occurs only if the restraint created thereby is unreasonable. That was not alleged in count I. This theory was promulgated by Federal cases decided under similar provisions of section 1 of the Sherman Act (15 U.S.C. §1 (1964)) upon which section 3(1)(a) was based. In *United States v. Columbia Pictures Corp.* (S.D. N.Y. 1960), 189 F. Supp. 153, the court found an agreement to be permissible which enabled a small producer of motion pictures to market the television rights to its pictures (then a small part of its business) under a package agreement by which those rights of a major producer were also marketed.

In *Parmelee Transportation Co. v. Keeshin* (N.D. Ill. 1970), 186 F. Supp. 533, an agreement between 21 railroads using passenger terminals in Chicago to contract with a single carrier to perform all independent transportation services for passengers between the various terminals at fixed rates was also held to be permissible.

In both *Columbia Pictures* and *Parmelee Transportation Co.*, the agreement questioned not only involved actions ancillary to the principal source of the defendant's business, but the agreement was also deemed reasonably necessary for the parties charged to effectively market the product or furnish the services in issue. This test of necessity has also recently been recognized as an exception to the *per se* rule in *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* (1979), 441 U.S. 1, 60 L. Ed. 2d 1, 99 S. Ct. 1551. There, the United States Supreme Court stated that it was confronted with what technically amounted to price fixing, but the court nevertheless held that the Federal antitrust statutes had not been violated. The composers of over 4 million musical works copyrighted in the United States got together and established a uniform rate allowing a

commercial producer to use all of the works. In view of the enormous number of individual contracts which would otherwise be required, the court found the agreement to be reasonably necessary for a legitimate purpose and no broader than necessary. The court also said:

> "Joint ventures and other cooperative arrangements are also not usually unlawful, at least not as price-fixing schemes, where the agreement on price is necessary to market the product at all." 441 U.S. 1, 23, 60 L. Ed. 2d 1, 18-19, 99 S. Ct. 1551, 1564.

The trial court explained its ruling in the instant case partly upon the basis that no *per se* violation of the Act was alleged. However, here the complaint alleged that the joint venture had conveyed various lots to their individual members who in turn intended to and did sell them to the public. If this was so the individual defendants became competitors in the sale of lots. No allegation of the complaint negated the existence of a *per se* violation. For instance, no allegation indicated that a restriction on the sale of lots was necessary to enable any of the defendants to sell building materials. The corporate or partnership defendants were principally engaged in the supplying of building materials. Their sale of lots would ordinarily be ancillary to that of selling building supplies but the sale of the two are closely related. Because of this close relationship and because the complaint in no way indicated that the alleged price fixing agreements were necessary for defendants to sell either the lots or the building materials, we must apply a *per se* standard in judging the sufficiency of the complaint.

The trial court also agreed with defendants' contention that count I did not detail the alleged conspiratorial relationships with sufficient particularity to allow defendants to respond to the charges. Section 42(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 42(2)) requires a pleading to be sufficient to inform "the opposite party of the nature of the claim or defense which he is called upon to meet." Furthermore, a violation of section 3(1)(a) constitutes a conspiracy of which the pleading requirements have been stated in these terms:

> "An allegation of conspiracy * * * must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently * * * is not good pleading. These general words, unsupported by facts, are, at best, mere vituperation." *Owens v. Green* (1948), 400 Ill. 380, 393, 81 N.E.2d 149, 157.

■■ Although count I of the amended complaint does not present us with a model of clarity, it does allege: (1) the legal relationships of the defendants; (2) the individual defendants' status as competitors in the real estate market; and (3) the dates upon which the individual defendants agreed to fix the prices for several specified lots. The information contained in this complaint is apparently more detailed than that which

confronted the supreme court in *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 291 N.E.2d 648. In that case the supreme court reversed a trial court dismissal of criminal antitrust indictment, stating:

> "The indictment here under consideration was not without detail. It defined its terms; named all of the defendants, both individual and corporate; described them as co-conspirators in the offense charged; described the nature of the trade and commerce involved; asserted the offense charged and that it violated section 3—(1)a of the Illinois Antitrust Act; and further detailed the scope, purpose and effect of the fixing, controlling and maintaining the price of beer sold at wholesale by the defendants in Macon County. We believe the indictment adequately informed the defendants of the charges against them." 53 Ill. 2d 332, 347, 291 N.E.2d 648, 656.

As the courts of review of this State have not expressly permitted notice pleading, the requirements for pleading a conspiratorial antitrust violation in a civil case would be more stringent than those required in the Federal cases cited. Also, the civil requirements may well be greater than the requirements in an Illinois criminal case. As the allegations in count I exceeded the specificity requirements of *Crawford Distributing Co.* and set forth the essentials of the claim, we hold them to be sufficiently specific.

Count I of the amended complaint should not have been dismissed.

Count II was based upon section 3(2) of the Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—3(2)), which makes it a violation to "By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce."

In its order of dismissal the trial court found, "The action of the defendants as alleged by plaintiff in count II simply does not constitute an unreasonable restraint of trade." The trial court's reasoning was based on its belief that: (1) the corporate boundaries of Bloomington-Normal are patently ridiculous as a relevant market; and (2) count II failed to allege an anticompetitive effect which hurt anyone.

Although the parties have not cited nor have we found any authority explicitly recognizing that a relevant geographic area can be defined by corporate boundaries, the United States Supreme Court in interpreting a similarly worded Federal statute noted that under some circumstances the relevant geographic market might be as small as a metropolitan area. In that case the court stated:

> "Congress prescribed a pragmatic, factual approach to the definition of the relevant market and not a formal legalistic one. The geographic market selected must, therefore, both 'correspond to the commerical realities' of the industry and be economically signif-

icant." (*Brown Shoe Co. v. United States* (1962), 370 U.S. 294, 336, 8 L. Ed. 2d 510, 542, 82 S. Ct. 1502, 1530.)

The foregoing indicates that determination of the relevant market should seldom be made at the pleading stage. It is usually a question for the trier of fact. *United States v. E. I. Du Pont De Nemours & Co.* (1957), 353 U.S. 586, 1 L. Ed. 2d 1057, 77 S. Ct. 872; *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chemical Corp.* (3d Cir. 1978), 579 F.2d 20; *Cackling Acres, Inc. v. Olson Farms, Inc.* (10th Cir. 1976), 541 F.2d 242, *cert. denied* (1977), 429 U.S. 1122, 51 L. Ed. 2d 572, 97 S. Ct. 1158.

As land cannot be purchased in one community and transported to another as can items of personal property, the relevant market area for land would seem to be smaller than for almost any other type of property. We do not deem the allegation that Bloomington-Normal was the relevant market area to be fatal to count II.

Under Illinois law the anticompetitive effect must be pleaded and proved and will not be presumed. (*Blake v. H-F Group Multiple Listing Service* (1976), 36 Ill. App. 3d 730, 345 N.E.2d 18.) In *Blake,* a group of realtors set up a multi-listing group in Homewood-Flossmoor limiting membership to those with offices in the area. The plaintiff in that case was a realtor living outside of the area who sued the group alleging that they listed or sold 18 percent of Homewood homes, 41 percent of Flossmoor homes, and 42 percent of the homes in Olympia Fields. The appellate court ruled that since there had been no allegation that the number of opportunities to competitors had been reduced, the dismissal with prejudice was proper. Accord, *People ex rel. Scott v. Convenient Food Mart, Inc.* (1974), 21 Ill. App. 3d 97, 315 N.E.2d 124.

Contrary to the situation in *Blake* and *Convenient Foods,* count II here stated that defendants' actions would "limit the number of lots which could be purchased by non-defendant home building contractors" and would result in "higher interest rates [to] home building contractors other than defendants." Count II sufficiently alleged an anticompetitive effect.

The dismissal of count II was also error.

Count III is based upon section 3(4) of the Act which prohibits certain types of sales or leases whereby in order to purchase or lease one item the purchaser or lessee is also required to make other purchases or rentals. The practice is often referred to as "tying" because the sale or lease of one item is tied to the other. The practice is stated to be a violation of the Act "where the effect of such lease, sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." Count III alleged that defendant Lumberlane, Inc., owned or controlled a substantial number of lots in Bloomington-Normal zoned for single-family residence and conditioned its sale of those lots upon

purchase of various items of building materials from them. The effect of the agreement was stated in various ways to be to restrain "a not unsubstantial amount of commerce in building materials."

The trial court dismissed the count because it deemed the allegations insufficient to demonstrate that the tying arrangements had a substantial effect on commerce. We agree. The allegation was conclusionary in nature. Although a tying agreement is not a conspiracy and the particularity for alleging a conspiracy was not required of count III, as limited by the bill of particulars, the count alleges only one agreement as to one residential lot. We fail to see how one such agreement could have a substantial effect upon commerce regardless of the limited nature of the relevant market.

Some defendants maintain count III also fails to state a cause of action because it lacks an allegation that defendant Lumberlane, Inc., possessed sufficient economic power in the market for the tying product (building lots) to restrain competition in regard to the tied products (building materials). To allege an illegal tying arrangement under the Sherman Act (15 U.S.C. §§1-7 (1976)) or its progeny, such an allegation would be required. (*United States Steel Corp. v. Fortner Enterprises, Inc.* (1977), 429 U.S. 610, 51 L. Ed. 2d 80, 97 S. Ct. 861; *Fortner Enterprises, Inc. v. United States Steel Corp.* (1969), 394 U.S. 495, 22 L. Ed. 2d 495, 89 S. Ct. 1252.) However, as a different panel of this court has stated in *People ex rel. Scott v. Schwulst Building Center, Inc.* (1981), 92 Ill. App. 3d 552, 414 N.E.2d 1375, also filed this day, section 3(4) of the Act, a violation of which was charged in count III was patterned after a very similarly worded provision of the Clayton Act (15 U.S.C. 814). In *Times-Picayune Publishing Co. v. United States* (1953), 345 U.S. 594, 97 L. Ed. 1277, 73 S. Ct. 872, the Court stated by way of dictum that in Clayton Act cases, charging of illegal tying arrangements could be based upon either the strength of the seller or lessor's economic power in regard to the tying product *or*, as plaintiff attempted to allege here, the substantial effect of the agreement upon the commerce in the tied product.

The appellate court of this State has adopted the *Times-Picayune* dictum in dictum of its own in *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 302 N.E.2d 79. Some defendants contend that the two *Fortner Enterprises* opinions indicated an abandonment of the distinction between the Sherman Act and Clayton Act rules for showing an illegal tying arrangement and indicated that the Sherman Act requirements apply to both. Although substantial authority supports this theory (*Spartan Grain & Mill Co. v. Ayers* (5th Cir. 1978), 581 F.2d 419, *cert. denied* (1979), 444 U.S. 831, 62 L. Ed. 2d 39, 100 S. Ct. 59; *In re Data General Corp.* (N.D. Cal. 1980), 490 F. Supp. 1089), we do not so interpret the *Fortner Enterprises* opinions. The *Times-*

*Picayune Publishing Co.* dictum was based upon an analysis of prior United States Supreme Court decisions and we deem it appropriate to follow it.

We do not agree with plaintiff that the mere allegation that the tying product was land would, of itself, dispense with any requirement that the economic power of the seller or lessor in the tying product be alleged. Plaintiff's theory arises from *Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 2 L. Ed. 2d 545, 78 S. Ct. 514, where the railroad's very substantial strategically located land holdings extending over several States were held to conclusively show a restraint on competition in the tying product, the land. The Supreme Court upheld a summary judgment finding tying arrangements in violation of the Sherman Act to arise from the railroad's agreements to sell or lease the land conditioned upon the purchaser's or lessee's exclusive use of the railroad for transportation of commodities produced on the land. The essence of the decision was the extent of the railroad's holdings of the tying product and not that the tying product was land.

Argument is also made by some defendants that as the Clayton Act does not apply to land, section 3(4) of the Illinois Antitrust Act does not do so either. A different panel of this district has so held in the *Schwulst Building Center, Inc.*, case previously cited. Because of our ruling here, we need not discuss that issue.

The trial court properly dismissed count III.

We affirm the portion of the judgment dismissing count III and reverse the portion dismissing counts I and II. We remand to the circuit court of McLean County for further proceeding.

Affirmed in part; reversed in part; remanded.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part:

I concur in the majority opinion in all respects except for the failure to discuss whether or not the Illinois Antitrust Act is applicable to land. I agree with Mr. Justice Green's dissenting opinion in *People ex rel. Scott v. Schwulst Building Center, Inc.* (1981), 92 Ill. App. 3d 552, 414 N.E.2d 1375, that the Act does apply to land and express the view that we should so hold here.