(No. 54635.—

THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Appellant, v. SCHWULST BUILDING CENTER, INC., *et al.,* Appellees.

*Opinion filed February 2, 1982.—Rehearing*
*denied March 25, 1982.*

366

UNDERWOOD, J., took no part.

Tyrone C. Fahner, Attorney General, of Springfield (Thomas M. Genovese, Thomas J. DeMay, and Bruce J. Baker, Assistant Attorneys General, of Chicago, of counsel), for appellant.

John P. Schwulst, of Arnold, Gesell, Schwulst & Stevens, of Bloomington, for appellees.

JUSTICE MORAN delivered the opinion of the court:

The circuit court of McLean County granted the motion of defendants, Schwulst Building Center, Inc., Carl F. Schwulst, Jr., and Warren W. Schwulst, to dismiss with prejudice an action brought by the Attorney General of Illinois (State) arising under section 3(4) of the Illinois Antitrust Act (Act) (Ill. Rev. Stat. 1979, ch. 38, par. 60—3(4)). The appellate court, in a two-to-one decision, held that section 3(4) does not apply to land and affirmed the dismissal of the complaint insofar as it was brought under section 3(4) of the Act. However, it reversed the trial court's order of dismissal with prejudice and remanded the case to allow the State to amend its complaint. 92 Ill. App. 3d 552.

The primary issue before us is whether section 3(4) of the Act applies to land. As a corollary issue, we must

determine if that section mandates application of the so-called *"per se"* test.

The facts were adequately related by the appellate court. To summarize, the record reveals that defendants own or control many single-family building lots in the Bloomington-Normal area. They are also engaged in selling building materials to contractors and home builders in the same area. Defendants sold some of the materials as a package, consisting principally of preassembled roof trusses, floor trusses, exterior and interior walls, and exterior trim. The State filed suit, alleging that the purchase of a building lot was conditioned upon the purchase of a package of building materials to be used in the same lot, thereby violating section 3(4) of the Act.

The original complaint was filed on February 16, 1977. Defendants' motions to dismiss under sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45, 48) were allowed with leave to plead over. The amended complaint, which is at issue here, was filed July 29, 1977. Motions to dismiss were denied. On November 17, 1977, defendants filed a demand for a bill of particulars, which was allowed by the trial court. Plaintiff filed the bill of particulars, and defendants filed a motion to strike the same. The trial court allowed the motion to strike with leave to amend. Plaintiff filed an amended bill of particulars, after which defendant filed a motion to strike the amended bill and also to dismiss the action with prejudice. On March 25, 1980, the trial court granted defendants' motion, stating only that the amended complaint did not state a cause of action and the bill of particulars did not reasonably answer the questions posed by the defendants. As indicated above, the appellate court majority concluded that section 3(4) of the Act does not apply to land and that the State, therefore, would be unable to state a cause of action under that section. The court found, however, that it does not follow that plaintiff could not state a cause of action under the

Sherman-type provisions of section 3, particularly section 3(2) of the Act, and reversed the dismissal with prejudice and the order striking the amended bill of particulars. 92 Ill. App. 3d 552.

We initially note that the Illinois Antitrust Act, enacted in 1965 (Ill. Rev. Stat. 1979, ch. 38, pars. 60—1) was patterned after the Sherman Act (15 U.S.C. § 1 *et seq.* (1976)) and consciously omitted the Clayton Act (15 U.S.C. § 12 *et seq.* (1976)). (Ill. Ann. Stat., ch. 38, Commentary on the 1967 Illinois Antitrust Act, at 441 (Smith-Hurd 1977).) Section 3(4) was added to the Illinois Antitrust Act in 1969 and was inserted immediately following sections 3(1), 3(2) and 3(3), which were part of the Act enacted in 1965. As the appellate court indicated, section 3(4) was an almost verbatim enactment of section 3 of the Clayton Act verbiage with two major exceptions: (1) The addition of the words "or services" and (2) the elimination of the words necessary for Federal jurisdiction.

Section 3 of the Illinois act provides:

"Every person shall be deemed to have committed a violation of this Act who shall:

*  *  *

(4) Lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, *or other commodities, or services,* whether patented or unpatented, for use, consumption, enjoyment, or resale, or fix a price charged thereof, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, *or other commodity or service* of a competitor or competitors of the lessor or seller, where the effect of such lease, sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce; *  *  *." (Emphasis added.) (Ill. Rev. Stat.

1979, ch. 38, par. 60—3(4).)

One violation set forth in this section is commonly referred to as a tying arrangement whereby a party agrees to sell or lease an item (the tying item) only on the condition that the purchaser or lessee also purchase a different item (the tied item).

The State argues that use of the term "commodities" in section 3(4) demonstrates a legislative intent that the section apply to land. Conversely, defendants argue that alleged tying actions under section 3(4) cannot include real estate as one of the tying or tied items. To support their position, the defendants contend that the language used in section 3(4) is very similar to the language used in section 3 of the Clayton Act, as well as the statutes of other States. Inasmuch as neither the Federal nor State cases construe this similar language as applying to land, defendants argue that section 3(4) of the Act likewise does not pertain to land.

We acknowledge the similarity of section 3(4) to section 3 of the Clayton Act (15 U.S.C. § 14 (1976)). And, as defendants point out, the term "commodities" as it appears in the Clayton Act as well as State statutes is held *not* to include real property. (*E.g., Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc.* (7th Cir. 1961), 295 F.2d 375, 378; *Moore v. Jas. H. Matthews & Co.* (9th Cir. 1977), 550 F.2d 1207; *Suburban Mobile Homes, Inc. v. AMFAC Communities, Inc.* (1980), 101 Cal. App. 3d 532, 549-50, 161 Cal. Rptr. 811, 821.) We also note section 11 of the Act, which provides that courts, in construing the Act, "shall follow the construction given to the Federal Law by the Federal Courts." The Bar Committee Comments (Ill. Ann. Stat., ch. 38, par. 60—11, Bar Committee Comments—1967, at 513 (Smith-Hurd 1977)) add that the Illinois act should be construed like the Federal acts when "the language and structure of the Illinois Act do not indicate that a different result was intended." (See Wash. Rev. Code 1961,

tit. 19, § 19.86.050, which is identical to section 3(4) of the Illinois act and which is to be construed by the courts of that State with guidance by the interpretation given by the Federal courts. Also see *Hansen v. Raleigh* (1945), 391 Ill. 536, 549, which provides that the judicial construction previously placed on a statute that is adopted from another State is incorporated therein.)

We need not consider here the binding effect of section 11 on our courts, since a fundamental difference exists between the Illinois act, on the one hand, and the Clayton Act and the acts of other States, on the other. Section 4 of the Illinois Antitrust Act provides:

"As used in this Act, unless the context otherwise requires:
* * *
'Commodity' shall mean any kind of real or personal property." (Ill. Rev. Stat. 1979, ch. 38, par. 60—4.)

Neither the Clayton Act nor the statutes of other States contain a provision that defines "commodity" to include real property.

Legislative intent is to be derived primarily from a consideration of the legislative language itself. "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) Moreover, when an act defines its terms, those terms must be construed according to the definitions contained in the act. (*Krebs v. Thompson* (1944), 387 Ill. 471, 478.) Thus, the term "commodity" as used in the Illinois Antitrust Act should be construed according to its definition in section 4.

Section 4 was enacted in 1965, at the same time as sections 3(1)(a), (b) and (c), which also incorporate the term "commodity." When section 3(4) was enacted in 1969,

it was inserted in the same section where commodity is used in the Act and where the term obviously applies to land. There was no language to the effect that use of the term in section 3(4) was to have a different meaning than use of the term elsewhere in that same section. This court has held that where a word is used in different sections of the same legislative act, unless a contrary legislative intent is clearly expressed, the presumption is that the word is used with the same meaning throughout the act. (*Lawton v. Sweitzer* (1933), 354 Ill. 620, 625; *Board of Education v. Morgan* (1925), 316 Ill. 143, 147.) Therefore, in the absence of a clear intent to exclude section 3(4) from the Act's definition of commodity, we presume that section to be subject to the definitional section just as are sections 3(1)(a), (b) and (c).

We also note that section 3(4) expanded upon the Clayton Act by covering "services." We do not agree with defendants' contention that if the legislature intended section 3(4) to apply to land it would have more clearly indicated so. The language of section 3(4), taken from the Clayton Act, used the term "commodity." As the appellate court dissent recognized, because section 4 already specifically defined "commodity" to include land, the legislature had no reason to expand upon the term "commodities" in order to demonstrate that land was included, as well as services. This legislative intent, derived from the plain language of the statute, is supported by the 1967 Bar Committee Comments (Ill. Ann. Stat., ch. 38, par. 60—4, Bar Committee Comments—1967, at 475 (Smith-Hurd 1977)). They declare that a primary purpose of the Act was to eliminate loopholes in previously existing Illinois legislation, two conspicuous ones being the omission of penalties designed to curb restraints with respect to services and real estate. The comments state, "Accordingly, the definitions of Section 4 were expressly designed to make services and real estate subject to the prohibitions of the law. It was the feeling of the draftsmen that exemptions should be strictly limited * * *."

(Ill. Ann. Stat., ch. 38, par. 60—4, Bar Committee Comments—1967, at 475 (Smith-Hurd 1977).) There is no language in the 1969 amendments indicating that real estate was to be excluded from the prohibitions of the law and that the definitions of section 4 were to be inapplicable to the amendments.

Defendants argue that section 4 of the Act, defining "commodity," was enacted in 1965 to accompany section 3(1) and does not apply to section 3(4). Defendants point to the introductory language of the definitional section, "As used in this Act, unless the context otherwise requires": and argue that "commodities," as it appears in section 3(4), is used in a different context. We disagree. We do not construe the use of language similar to that found in the Clayton Act or use of the phrase "or other commodities" in conjunction with the nouns "goods, wares, merchandise, machinery, supplies" to present a context that "requires" that the definition be disregarded. If the word "other" which precedes commodities had been omitted, the clause would be confusing, in that the implication could arise that the specific items named were not commodities. That is, the clause would read, "goods, wares, merchandise, machinery, supplies or commodities ***." It is plausible to read the section as naming some specific commodities and then utilizing the general term "commodities," the definition of which is supplied by the next section in the Act.

We view the introductory language of section 4, "unless the context otherwise requires," as applicable to places in the Act such as section 5(8) where the Commodity Exchange Act is referred to or section 5(6) where the word "service" is used in reference to a not-for-profit organization in clear contrast to section 4, which defines services as any activity performed for the purpose of financial gain. Both these provisions were present in the original act when the "unless the context otherwise requires" language was also enacted. Unlike use of the term "commodities" in

section 3(4), sections 5(6) and 5(8) are instances where the legislature expressed a clear intent that the definitions in section 4 are not applicable. We also find no merit in defendants' argument that, based on rules of syntax and punctuation, the context requires that "commodities" in section 3(4) should be excluded from the definition. Defendants' rather strained grammatical explanation certainly does not, in our opinion, evince a clear legislative intent to exclude commodities from the definitional section of the Act.

In summary, section 3(4) was added as part of the same section where the term "commodity" originally appeared and where it was clearly intended to include real estate. As stated earlier, where a word is used in different sections of the same legislative act, there is a presumption that it is used with the same meaning throughout, unless a contrary legislative intent is clearly expressed. (*Lawton v. Sweitzer* (1933), 354 Ill. 620, 625; *Board of Education v. Morgan* (1925), 316 Ill. 143, 147.) We do not presume the legislature was unaware of the definitional section when it enacted section 3(4). Had it intended to exclude the term "commodities" from section 4, it could have done so in an unambiguous manner. The failure of the legislature to do so, in light of the clear and specific language of section 4, indicates to us that the legislature intended the same definition to apply to "commodities" in section 3(4) as in the other paragraphs of that same section. Finding no clear legislative intent to exclude section 3(4) from the definitional section of the Act, we accordingly hold the terms "commodities" and "commodity" appearing in section 3(4) of the Illinois Antitrust Act to be applicable to land.

Defendants argue that *per se* rules do not apply to section 3(4) of the Act. As noted earlier, section 3(4) is patterned after section 3 of the Clayton Act, to which a *per se* analysis is applied. Not surprisingly, under this issue

defendants retreat from analogies to Federal law which they utilized in the above argument, while the State, here, vigorously embraces analogies to Federal law. Defendants assert, "[I]t is debatable whether Illinois would follow the *per se* tests of Clayton section 3 given the fact that all *per se* violations are clearly set out in section 60—3(1) of the Act. *** [S]ubsection 3(4), not having been included as a *new addition* to the sections 3(1)(a), (b) and (c) is therefore not to be accorded *per se* status any more than a tying case could be under section 60—3(2) if the Sherman tying tests were met." We disagree. There is no indication that the legislature intended to preclude the subsequent addition of other *per se* sections. Moreover, section 3(2), unlike section 3(4), specifically provides that a "contract, combination, or conspiracy with one or more other persons [must] *unreasonably* restrain trade or commerce." (Emphasis added.) Section 3(4), on the other hand, requires only that the effect of the agreement described in the section "*may* be to substantially lessen competition or *tend* to create a monopoly in any line of commerce." (Emphasis added.)

The above-quoted language from section 3(4) is identical to section 3 of the Clayton Act, to which a *per se* test is applied. (*Standard Oil Co. v. United States* (1949), 337 U.S. 293, 304-05, 93 L. Ed. 1371, 1381-82, 69 S. Ct. 1051, 1057-58; *International Salt Co. v. United States* (1947), 332 U.S. 392, 396, 92 L. Ed. 20, 26, 68 S. Ct. 12, 15. See *Times-Picayune Publishing Co. v. United States* (1953), 345 U.S. 594, 608-09, 97 L. Ed. 1277, 1289-90, 73 S. Ct. 872, 880; Atkins, *State Antitrust Enforcement And Important New Amendments To The Illinois Antitrust Act* (1970), 58 Ill. Bar J. 699, 724-25.) That language, unlike the portion of section 3(4) dealing with commodities, is not subject to a definition elsewhere in the Illinois act that would supersede Federal law. Accordingly, under section 11, the Illinois act should be construed consistent with the Federal law.

In applying a *per se* test, the United States Supreme Court has repeatedly stated that tying agreements are to be treated harshly:

"'[T]ying agreements serve hardly any purpose beyond the supression of competition.' *Standard Oil Co. v. United States*, 337 U.S. 293, 305, 306, 93 L. Ed. 1371, 1382, 69 S. Ct. 1051. They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products." *Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 6, 2 L. Ed. 2d 545, 550, 78 S. Ct. 514, 518.

We note that the Illinois legislature intended that tying arrangements be dealt with harshly. The legislature carved out exclusive dealing and tying arrangements in section 3(4) and made them subject to criminal sanctions. (Ill. Rev. Stat. 1979, ch. 38, par. 60—6.) The only other provision subject to criminal sanctions is section 3(1), indisputably a *per se* section. We believe subjecting section 3(4) to criminal sanctions further demonstrates the legislature's intent that it be treated as a *per se* section, like section 3(1). See Curtis and Decker, *The 1969 Amendments To The Illinois Antitrust Act* (1970), 58 Ill. B.J. 698, 705.

Defendants argue that if section 3(4) mandates a *per se* test, there would be no reason for a plaintiff to bring an action under section 3(2) in a tying case, and that section would, in effect, be repealed. This argument, however, misses two essential points. First, section 3(4) proscribes only exclusive dealing and tying arrangements. Vertical arrangements still must be prosecuted under section 3(2). Second, plaintiffs obviously seek to apply a *per se* test in tying cases. As in the Federal cases, if the *per se* requirements are not met, the case can proceed under a rule-of-

reason analysis under section 3(2). See *Fortner Enterprises, Inc. v. United States Steel Corp.* (1969), 394 U.S. 495, 499-500, 22 L. Ed. 2d 495, 503, 89 S. Ct., 1252, 1256-57.

In summary, we conclude that section 3(4) of the Illinois Antitrust Act, which is patterned after section 3 of the Clayton Act, which does not contain any "reasonableness" language, which carves out exclusive dealing and tying arrangements and which, like the *per se* provisions in section 3(1), carries criminal sanctions, should be construed as a *per se* section.

Under the dictum of *Times-Picayune Publishing Co. v. United States* (1953), 345 U.S. 594, 608, 97 L. Ed. 1277, 1290, 73 S. Ct. 872, 880, the Supreme Court, after a thorough analysis of prior Supreme Court cases, concluded that a violation of section 3 of the Clayton Act occurs when the seller has economic power in the tying product *or* if a substantial amount of commerce in the tied product is restrained. (Accord, *Sargent-Welch Scientific Co. v. Ventron Corp.* (7th Cir. 1977), 567 F.2d 701, 708 n.9, *cert. denied* (1978), 439 U.S. 822, 58 L. Ed. 2d 113, 99 S. Ct. 87.) The rationale underlying this *per se* test is that "from either factor the requisite potential lessening of competition is inferred." (345 U.S. 594, 609, 97 L. Ed. 1277, 1290, 73 S. Ct. 872, 880.) The presence of the identical language in section 3(4) of the Illinois act (*i.e.*, a violation occurs if the effect of the agreement described in that section "may be to substantially lessen competition or tend to create a monopoly in any line of commerce";) leads us to adopt the *Times-Picayune* test for establishing a *per se* violation under that section. Accord, *People ex rel. Scott v. College Hills Corp.* (1981), 92 Ill. App. 3d 651, 657-58; *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 152.

A review of the amended complaint, particularly paragraphs 7 and 11, leads to the conclusion that the factors

delineated in *Times-Picayune* were sufficiently alleged.

Defendants contend that a tying arrangement was not properly alleged because nowhere in the amended complaint did the State allege that a party could not have the lot or the materials singly if requested. We disagree. The State's amended complaint specifically alleged:

"That the purchase by a contractor or home builder or ultimate home owner of a developed lot from Schwulst Building by and through Carl and Warren Schwulst be conditioned upon the purchase of a package of building materials from Schwulst Building to be used on the same lot; and,

That the purchase by a contractor or home builder or ultimate home owner of a developed lot from Schwulst be made with the understanding that the contractor or home builder or ultimate home owner shall not purchase preassembled trusses and walls or suitable substitutes from competitors of Schwulst Building."

After carefully reviewing the State's amended complaint, we conclude it sufficiently alleges a tying arrangement falling under the *per se* proscription of section 3(4) of the Illinois Antitrust Act.

For the above-stated reasons, the judgment of the appellate court and the judgment of the circuit court are reversed, and this cause is remanded to the circuit court of McLean County for further proceedings.

*Judgments reversed;*
*cause remanded.*

JUSTICE UNDERWOOD took no part in the consideration or decision of this case.